**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| BRIAN GERBER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:25-CV-00182 (WLS) |
| | : | |
| BOARD OF REGENTS OF THE | : | |
| UNIVERSITY SYSTEM OF | : | |
| GEORGIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

Before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 13). For the reasons discussed below, the Motion is **DENIED**.

## I.   **PROCEDRUAL BACKGROUND**

Plaintiff Brian Gerber ("Plaintiff" or "Gerber") filed this lawsuit on December 4, 2025. The original Complaint (Doc. 1) asserted a federal procedural due process claim against Dr. Richard Carvajal, in his official capacity as President of Valdosta State University, under 42 U.S.C. § 1983. Plaintiff also asserted state law claims against the Board of Regents of the University System of Georgia ("Board of Regents") for breach of contract, against Heidi Cox, in her individual capacity for defamation, and against Dr. Carvajal for violation of Georgia's Open Records Act. Plaintiff amended his complaint on February 6, 2026, removing his breach of contract claims against the Board of Regents and substituting Valdosta State University's interim President Dr. William Crowe, in his official capacity, for Dr. Carvajal. (Doc. 26). The Board of Regents was subsequently dismissed from the case. (*See* Docs. 25 & 37).

Before amending his complaint, Plaintiff moved for a preliminary injunction on December 22, 2025. (Doc. 13). Cox and now-dismissed-defendants Dr. Carvajal and the Board of Regents filed a Response (Doc. 16). Plaintiff filed a Reply (Doc. 22). While the Motion was pending, the remaining defendants, Crowe and Cox (collectively, "Defendants"), moved to dismiss Plaintiff's Amended Complaint. (Doc. 28).

1

The Court held a hearing on Plaintiff's Motion for Preliminary Injunction on March 11, 2026.[1] Plaintiff submitted three exhibits, which were admitted without objection. Defendants did not submit any exhibits. At the conclusion of the hearing, the Court afforded the Parties the opportunity to submit supplemental briefing. Plaintiff filed his brief on March 18, 2026, and Defendants submitted their brief on the same day. (Docs. 40, 41). Plaintiff's motion is thus fully briefed and ripe for ruling.

## II.    FACTUAL BACKGROUND

Plaintiff Brian Gerber was a tenured professor in the College of Education and Human Services at Valdosta State University (VSU) for approximately three decades. (Doc. 26 ¶ 2). He was also Director of VSU's STEAM Center for Applied Creativity and Innovation, which hosted a summer camp for foster children on VSU's campus in the summer of 2023. (*Id.* ¶¶ 3, 69). Gerber also assisted with a holiday fundraiser for Valdosta Early College Academy (VECA). (*Id.* ¶ 54). In April of 2024, VSU's Chief Audit Officer, Heidi Cox, began an audit of all VSU programs involving minors on the university's campus. (*Id.* ¶ 80–81). The initial stages of the audit identified alleged accounting issues with the 2023 summer camp, which prompted VSU to conduct an internal investigation into Gerber. (*Id.* ¶ 82). Gerber participated in this administrative review by sitting for three separate recorded interviews with Cox and her colleague, Jeanine Boddie-LaVan, VSU's Chief Human Resources Officer, and by providing documents and information to Cox. (*Id.* ¶ 83). A report was prepared following the conclusion of the investigation. (*Id.* ¶ 85). The report concluded that Gerber misappropriated funds designated for the 2023 summer camp and funds from the VECA fundraiser and recommended that administrative action be taken against Gerber. (*Id.* ¶¶ 86, 88, 96).

### A. Gerber's Decision to Retire

On March 17, 2025, VSU's Interim Provost, Dr. Sheri Noviello, sent a letter to Gerber notifying him of the report's findings and VSU's intention to begin tenure removal proceedings. (Doc. 26 ¶ 97); (Doc. 26-1). Gerber was placed on administrative leave and advised of the option to meet with an administrative officer to explore "a mutual settlement." (Doc. 26-1). The following day, March 18, 2025, Gerber emailed Noviello to schedule a

---

[1] While the Court initially set the hearing for both Plaintiff's injunction motion and Defendants' motion to dismiss, the Court declined to hear argument on the motion to dismiss and limited the scope of the hearing to evidence and argument on the injunction motion.

meeting and to inquire whether retirement was an option that would preserve his health benefits. (Doc. 16-3 at 6–7, 10–11). Noviello confirmed that retirement would preserve such benefits. (*Id.* at 10). On March 25, 2025, Noviello sent another email to Gerber clarifying that as part of the "mutual settlement" discussion, Gerber had the option to either "voluntarily separate from the institution" or "move forward with the dismissal process" under applicable Board of Regents policy. (Doc. 13-2 at 2–3).

The following day, March 26, 2025, Gerber's attorney, Anthony Cochran, spoke with VSU's Chief Legal Affairs Officer Justin Arrington regarding Gerber's options. (Doc. 16-1). Cochran memorialized the conversation by email, stating: "To confirm, the option that Dr. Gerber can 'voluntarily separate from the institution,' as expressed in the March 25, 2025 email from [Noviello], means that Dr. Gerber can retire and retain all his retirement benefits. We assume this will conclude the matter." (*Id.* at 5). Arrington responded the following day with instructions for Gerber's submission of his letter of resignation. (*Id.* at 4). Arrington did not otherwise address the remainder of Cochran's email.

On March 28, 2025, Gerber submitted his letter of retirement wherein he accepted VSU's offer to voluntarily resign. (Doc. 16-3 at 15). Gerber's letter stated: "Having accepted the University's offer and relying on [Arrington's] explanation, I hereby retire effective April 1, 2025, as Professor and Director of the STEAM Center, retaining all retirement benefits." (*Id.*) Gerber expressed his understanding that his retirement "concludes the matters" addressed in Noviello's March 17 letter related to Cox's investigation and the report's findings of misconduct. (*Id.*) Gerber believed the retirement benefits he retained to include eligibility to be rehired by VSU or by a different institution within the USG. (Doc. 26 ¶ 138). Gerber's belief was based on three things: (1) a University System of Georgia (USG) policy[2] regarding employment for retirees, (2) the common practice in academia of retired professors continuing to teach after retirement, and (3) Gerber's supervisor's recommendation for his designation as Professor Emeritus. (*Id.* ¶¶ 138–41); (Doc. 13 at 18–19).

---

[2] The specific USG policy, titled "Employment Beyond Retirement," states that retirees "may be eligible for reemployment with the USG on a part-time basis. The [retiree] shall not be reemployed by any institution of the USG without the prior approval of the hiring institution's president." (Doc. 13-3 at 2).

Arrington accepted Gerber's resignation on VSU's behalf on March 31, 2025, and in an email to Gerber and Cochran, he confirmed that the university would no longer be seeking termination of tenure but disclaimed control over any actions the Attorney General may take against Gerber. (Doc. 16-1 at 8). Dr. Carvajal also sent a letter accepting Gerber's retirement on March 31, 2025. (Doc. 3-4). Gerber contends that these communications—Cochran and Arrington's emails on March 26 and March 27, 2025, his retirement letter, and Dr. Carvajal's letter accepting his retirement—memorialized the terms of a contract between Gerber and VSU (hereinafter, "Retirement Agreement"). (Doc. 13 at 10).

## B. Ineligible for Rehire Designation

Under USG's "Policy on Eligibility for Rehire," any time an employee separates from a USG institution, the employee's immediate supervisor must initiate an eligibility review at the time of separation. (Doc. 26 ¶ 114); (Doc. 40-1 at 2). Employees receive one of three designations: eligible for rehire, ineligible for rehire, or conditional. (Doc. 40-1 at 1). An employee may be deemed ineligible for rehire when the employee "separate[s] for serious misconduct, major policy violations, or criminal behavior . . . for a minimum of three years from the date of separation." (*Id.* at 2). Ineligible for rehire designations require the approval of the institution's president or designee. (*Id.* at 3). When an institution seeks to have this designation applied, USG policy mandates that the employee "must be notified in writing, at the point of separation or as soon as reasonably possible . . . and may appeal their rehire status through established institutional procedures." (*Id.* at 1); (Doc. 26 ¶ 114).

On April 30, 2025, Arrington sent a letter to Gerber and Cochran notifying Gerber of VSU's intention to have the USG System Office designate Gerber as ineligible for rehire based on the findings of the administrative review. (Doc. 16-1 at 11). On May 13, 2025, after receiving Arrington's letter, Cochran wrote to Arrington disputing VSU's decision to seek the ineligible for rehire designation, contending that the matters of the administrative review were concluded by Gerber's decision to retire and that further action in that regard would constitute a breach of the Retirement Agreement. (Doc. 16-1 at 14–15).

Arrington responded on June 4, 2025, stating that VSU was obligated to ensure compliance with USG policy despite Gerber's retirement letter. (Doc. 40-3 at 7). On June 11, 2025, Boddie-LaVan submitted a request to the USG System Office to designate Gerber as

4

ineligible for rehire. (Doc. 26 ¶ 113). The stated reason for the designation was "Ethics Violations/Misappropriation of Funds." (Doc. 26-5). The designation request was approved by the USG on June 17, 2025. (Doc. 16-5 at 8).

### C. Appeal of the Ineligible for Rehire Designation

Gerber was notified of the approval of his designation as ineligible for rehire on June 26, 2025. (Doc. 26 ¶ 117). Gerber requested a hearing before Dr. Carvajal and formally appealed the designation to VSU on June 30, 2025, by a letter sent via email to Arrington. (Doc. 16-1 at 19–20); (Doc. 26 ¶¶ 118–19). Arrington indicated that Gerber would need to forward his appeal to the USG System Office. (Doc. 40-3 at 43); (Doc. 26 ¶ 119). The System Office subsequently redirected Gerber to VSU because under USG Policy, appeals of rehire designations are heard at the institutional level. (Doc. 26 ¶ 120); (*see* Doc. 40-1 at 1 (stating that employees "may appeal their rehire status through established institutional procedures")). Gerber thus resubmitted his appeal on July 9, 2025, and supplemented the submission with additional evidence and argument on July 12 and 14, 2025. (*Id.* ¶ 121). On July 23, 2025, Gerber's appeal was denied by Dr. Carvajal in what constituted "the final institutional decision."[3] (*Id.* ¶ 122); (Doc. 16-4 at 4).

### D. Cox's Presentation

On May 29, 2025, Cox gave a presentation to the USG's Office of Internal Audit, Ethics and Compliance that Gerber alleges was attended by people from outside VSU and the USG. (Doc. 26 ¶ 103). The general topic of the presentation was the investigation and administrative review Cox conducted into Gerber's activities with the STEAM Center and the VECA fundraiser. (*Id.* ¶¶ 104–109). Gerber alleges that the presentation contained thinly veiled references to him, which made it easy for attendees to identify him. (*Id.* ¶ 106). For example, the presentation referred to the "STEAM Center director." (*Id.*) During the presentation, Cox accused the STEAM Center director of misappropriating state funds designated for the summer camp for foster children and other instances of misconduct. (*Id.* ¶¶ 107–09).

---

[3] According to Arrington, appeals of ineligible for rehire designations at VSU are forwarded to the president "for his review and final institution decision." (Doc. 16-1 ¶ 4).

### III. <u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

Gerber moves for a preliminary injunction requiring the Board of Regents and Dr. Crowe to remove the ineligible for rehire designation. (Doc. 13 at 26). As noted above, the Board of Regents has been dismissed from the action along with Gerber's breach of contract claims against it. As such, the Court analyzes Gerber's due process claim in determining whether injunctive relief is available to him.

### A. Standard of Review

To receive a preliminary injunction, a plaintiff must clearly establish the following: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest." *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018) (quotation omitted). In cases where the government is the party opposing the preliminary injunction, the third and fourth elements merge. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *ACLU of Fla., Inc. v. Miami–Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009); *see Am. Airlines, Inc. v. Spada*, No. 23-21844-CIV, 2023 WL 8001220, at *3 (S.D. Fla. Nov. 18, 2023) (noting that the preliminary injunction standard is more stringent than that of a motion to dismiss because "a plaintiff's claims must not be merely plausible, but likely to succeed on the merits").

### B. Substantial Likelihood of Success

Gerber must show a substantial likelihood of success on his procedural due process claim. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Section 1983 holds any person acting under color of state law liable for depriving another person of a federal right. 42 U.S.C. § 1983. To bring a due process claim under § 1983, a plaintiff must establish "(1) deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1035 (11th Cir. 2022) (quotation marks omitted). The second element, state action, is not in dispute here. Thus, the Court addresses the first and third elements.

6

### 1. *Constitutionally Protected Interests*

Gerber alleges three protected interests: (1) a property interest in continued and prospective employment, (2) a liberty interest in the ability to contract freely, and (3) a liberty interest in his reputation. (Doc. 13 at 20–21). The Court addresses each alleged interest in turn.

### a. **Continued and Prospective Employment**

"State law determines whether a public employee has a property interest in his or her job." *Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir. 1991) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)). Generally, Georgia is an at-will employment state. *See* O.C.G.A. § 34-7-1. But "state law can create an entitlement to a job through explicit contractual provisions or through 'rules or mutually explicit understandings.'" *Brown v. Georgia Dep't of Revenue*, 881 F.2d 1018, 1026 (11th Cir. 1989) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). "To obtain a protected property interest in employment, a person must have more than a mere unilateral expectation of continued employment; one must have a legitimate claim of entitlement to continued employment." *Warren*, 927 F.2d at 562 (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Gerber contends that he has a property interest in continued employment with VSU and prospective employment with other institutions in the USG because the Retirement Agreement's promise of full retirement benefits created an entitlement. (Doc. 13 at 21). He argues that this entitlement is further supported by his supervisor's recommendation for Professor Emeritus status and the general understanding that retired professors often continue to teach, which constitute "informal 'rules and understandings, promulgated and fostered by state officials.'" (*Id.* (quoting *Sindermann*, 408 U.S. at 601)). The Court finds that Gerber did not have a protected property interest in employment for two reasons.

First, assuming the Retirement Agreement created a binding contract, that alone is not enough to create a constitutionally protected property interest.[4] *See Key W. Harbour Dev. Corp. v. City of Key W., Fla.*, 987 F.2d 723, 727 (11th Cir. 1993) ("The existence of an enforceable contract with a state or local government entity does not give rise to a constitutionally

---

[4] For the purpose of its analysis, the Court assumes that the Retirement Agreement was a contract between the Parties. Because the Court concludes that the Retirement Agreement, even as construed, does not create a property interest, the Court does not reach the question of whether the Retirement Agreement did in fact create an enforceable contract between the Parties.

protected property interest."). Gerber must show a deprivation of a constitutional right. *Braden v. Texas A & M University*, 636 F.2d 90, 93 (5th Cir. Unit A Feb. 1981) (holding that a mere breach of contract does not give rise to a constitutionally protected property interest; rather a plaintiff must predicate relief on a deprivation of a constitutional right).[5] Here, assuming that the Retirement Agreement is an enforceable contract and that its promise of "full retirement benefits" includes being deemed eligible for rehire, the agreement still cannot be read as securing Gerber's right to be reemployed. Eligibility for reemployment is not a guarantee of continued or future employment, but rather the opportunity to possibly be rehired in the future. The mere possibility of employment does not count as a "legitimate claim of entitlement" required to create a protectable property interest. *Warren*, 927 F.2d at 562; *see Bradshaw v. FAA*, 8 F.4th 1215, 1225 (finding no legitimate claim of entitlement to the renewal of an employment designation where the applicable rules did not guarantee renewal).

Gerber cites *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) and *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) to argue that the Retirement Agreement created a property interest in continued employment. (Doc. 13 at 21). But those cases are wholly distinguishable from the facts present here. In *Loudermill*, the Supreme Court found that the respondent-employees had a property interest in continued employment based on a state statute that clearly stated they could only be terminated for cause. 470 U.S. at 538–39. And in *Roth*, the Court found that the respondent-professor's employment contract created a property interest in his employment only through the contract's end date because the contract did not contain a provision for renewal which might secure an interest in future employment. 408 U.S. at 578. This case does not involve a state statute, or any other contract or agreement, securing the right to be reemployed. The Retirement Agreement secured at most Gerber's eligibility to be reemployed, and as discussed below, any reemployment would have then been subject to additional policy requirements and the discretion of university officials.

Second, the policies Gerber relies on to support his property interest are discretionary in nature and do not create an entitlement to continued or future employment. In determining whether a policy creates a protectable property interest, "the determinative issue is the level of

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the court adopted as binding precedent all decisions of the former Fifth Circuit, including Unit A, handed down prior to October 1, 1981.

discretion afforded to the governmental body by the statutes, ordinances, policies or rules. The more discretionary authority afforded the governmental body by the [policy], the less likely a constitutional protected property right exists." *Am. Recycling Co. v. Cnty. of Manatee*, 963 F. Supp. 1572, 1583 (M.D. Fla. 1997) (citing *Key W. Harbour Dev. Corp.*, 987 F.2d 723; *Circa Ltd. v. City of Miami*, 79 F.3d 1057 (11th Cir. 1996); and *Pataula Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238 (11th Cir. 1992)). The Eleventh Circuit has looked to the discretion afforded to the relevant authority in the employment context as well. *See Edwards v. Brown*, 699 F.2d 1073, 1077 (11th Cir. 1983) (holding that an ordinance which provided that an employee "shall serve during good behavior and efficient service, to be judged by the commissioner or a designee" created no property right for the employee); *Warren*, 927 F.2d at 563 (holding that policies in a personnel handbook created no property interest for department heads because they were subject to dismissal at the discretion of an administrator).

The "Employment Beyond Retirement" policy states that retirees receiving benefits from specified retirement plans and programs "may be eligible for reemployment with the USG on a part-time basis. The [retiree] shall not be reemployed by any institution of the USG without the prior approval of the hiring institution's president." (Doc. 13-3 at 2). As Defendants point out, being eligible for rehire is not a guarantee of future employment. (Doc. 16 at 11). Instead, retirees *may* be eligible for reemployment if they meet certain conditions and if they receive the approval of the hiring institution's president. (*See generally* Doc. 13-3). So, even if Gerber was deemed eligible for rehire, he was not guaranteed to be reemployed as a retiree because the decision is within the discretion of the hiring institution's president.

Additionally, the Academic and Student Affairs Handbook policy governing the award of emeritus status similarly affords discretion to the university's president. It allows the university president to confer the title of emeritus "at his or her discretion[,]" and further provides that the "conferral of emeritus/emerita status is considered a distinctive honor, not a right, and is not automatic." (Doc. 13-4 at 4). Gerber's supervisor recommended him for Professor Emeritus status, but the recommendation was subject to the president's discretion. Gerber also points to the general understanding that retired professors often continue to teach. (Doc. 13 at 21). But in order to continue teaching after retirement, professors must necessarily

obtain the approval of the hiring university's president, in accordance with USG policy. For rules or understandings to create a property interest, they must "secure certain benefits [] that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. The policies Gerber cites do not secure any benefit or create any legitimate claim to continued or future employment for him or other retiring professors. They merely provide for the *possibility* of future reemployment.

In sum, Gerber has not shown that he had a property interest in continued or future employment at VSU or other USG institutions.[6] At most, the Retirement Agreement required that Gerber be designated eligible for rehire, and the *possibility* of being rehired, which in this case was subject to the discretion of the hiring institution's president, is not a legitimate claim of entitlement required to create a protected property interest.

### b. Liberty Interest to Contract Freely

Gerber alleges a liberty interest in the ability to contract freely with other institutions in the USG. (Doc. 13 at 20–21). He cites only *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), which indeed held that the term "liberty" in the text of the Fourteenth Amendment includes an individual's right to contract. But "[l]iberty interests are both broader and more difficult to define than property interests[,]" because, unlike property interests, they do not exist "in concrete entitlements secured by independent sources of law." *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1367 (11th Cir. 1993). Even so, "no citizen has a 'right' . . . to do business with the government." *Id.* at 1366 (citation and quotation marks omitted).

In the context of employment, the Eleventh Circuit held in *Bradshaw v. FAA* that "the right to apply for the same job from which [plaintiff] was terminated does not constitute a liberty interest." 8 F.4th 1215, 1226 (11th Cir. 2021). There, the plaintiff alleged that his termination deprived him of his liberty interest to seek future employment because FAA rules barred him from applying for reinstatement. *Id.*

---

[6] Defendants contend that Gerber's choice to resign extinguished his due process rights. (Doc. 16 at 7–8). Generally, when a government employee, who is otherwise entitled to due process, voluntarily resigns, he relinquishes any due process protections he might have had. *See Hargray v. City of Hallandale*, 57 F.3d 1560, 1565 (11th Cir. 1995). Plaintiff contests this point, arguing that his resignation was involuntarily extracted. (Doc. 22 at 11–12). The Court need not reach the issue of the voluntariness of Gerber's resignation because the Retirement Agreement did not create a protected property interest, and thus, no process was required prior to the ineligibility designation.

Defendants contend that the same is true here because like the plaintiff in *Bradshaw*, Gerber has no protected liberty interest in being reemployed by the Board of Regents, either at VSU or at any other USG institution. (Doc. 16 at 12). The Court agrees. It is well-settled that the Board of Regents is the state agency vested with the "governance, control, and management of the University System of Georgia." Ga. Const. Art. VIII, § IV, para. I(b); *see Nicholl v. Bd. of Regents of Univ. Sys. of Georgia*, No. 1:16-CV-01350, 2016 WL 9651773, at *4 (N.D. Ga. Nov. 30, 2016), *aff'd*, 706 F. App'x 493 (11th Cir. 2017). Thus, Gerber has no protected liberty interest in future employment with VSU or other institutions governed by the Board of Regents.

### c. Liberty Interest in Reputation

Gerber alleges a liberty interest in his reputation based on Cox's allegedly defamatory statements made during her presentation to the USG Office of Internal Audit, Ethics and Compliance. (Doc. 13 at 21). To establish a deprivation of a liberty interest without due process of law, Gerber must show: "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for [an] employee name clearing hearing." *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1042–43 (11th Cir. 1989). Based on the allegations in Gerber's Amended Complaint, it appears that all of the elements are met, except for one:[7] that the stigmatizing statements in Cox's presentation were made during the course of Gerber's discharge from employment. For one, Gerber was not discharged or terminated, rather he resigned from his position at VSU. And Cox's presentation was given on May 29, 2025, nearly two months after Gerber's retirement was affected on April 1, 2025. While Cox's statements relate to the circumstances of Gerber's retirement (i.e., the administrative review), Gerber does not allege that the statements were made during the course of events surrounding his retirement. *See Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 n.1 (11th Cir. 2001) (noting that stigmatizing statements must occur during the course of the termination).

---

[7] The Court notes that Gerber's allegations seem to contradict the element that the statements were made "by the governmental employer" because he alleges that Cox acted outside the scope of her employment when she gave the presentation. (Doc. 26 ¶ 111). The Court, however, need not reach the issue of whether Cox was acting within the scope of her job as the Chief Audit Officer, and thus, as a governmental employer, because the Court concludes that Gerber has not shown the deprivation of a recognized property or liberty interest in connection with Cox's alleged defamation, which is required to establish a liberty interest in his reputation.

11

Setting this aside, "defamation by the government, standing alone and apart from any other governmental action, does not constitute a deprivation of liberty or property under the Fourteenth Amendment." *Cannon*, 250 F.3d at 1302 (citing *Paul v. Davis*, 424 U.S. 693, 694 (1976)). Instead, "a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest" to invoke the protections of the Due Process Clause. *Id.* (citing *Paul*, 424 U.S. at 701–02); *see Moore v. Otero*, 557 F.2d 435 (5th Cir. 1977) ("To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law."). This is known as the "stigma-plus" test.

In applying the test to § 1983 claims, the Eleventh Circuit has held that allegations of an injury to one's reputation must be accompanied by "a constitutionally recognized injury[,]" meaning that the plaintiff must show "that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436 (11th Cir. 1998) (citing *Paul*, 424 U.S. at 712). Here, as discussed at length above, Gerber does not have a protected property interest in continued or prospective employment or a liberty interest in his right to contract. And even if he did have a protected interest, Gerber does not allege or even argue that Cox's conduct was what deprived him of that interest. Cox's presentation occurred both after Gerber made the decision to retire and after VSU first expressed its intent to have Gerber designated as ineligible for rehire. *Contrast Behrens v. Regier*, 422 F.3d 1255, 1263 (11th Cir. 2005) (holding that where the plaintiff showed only reputational damage, he failed to allege the deprivation of a constitutionally protected liberty or property interest) *with Masvidal v. U.S. Dep't of Just.*, 716 F. Supp. 2d 1207, 1212 (S.D. Fla. 2010) (finding that where the plaintiff alleged that the defendant's conduct resulted in his termination and further imposed a stigma that prevented him from securing other employment opportunities, the plaintiff sufficiently alleged a deprivation of a recognized right). Without a protected right or status, Gerber has alleged nothing more than a defamation claim.

In sum, Gerber fails to satisfy the "plus" requirement of the stigma-plus test because he has not demonstrated that Cox's statements deprived him of a constitutionally protected

interest. Further, the statements were not made during the course of Gerber's discharge. *See Buxton*, 871 F.2d at 1042–43. Since Gerber has only alleged reputational damage, he cannot show a deprivation of a constitutionally protected liberty interest in his reputation.

Because the Court finds that Gerber has not established a constitutionally protected liberty or property interest, his due process claim necessarily fails for purposes of the preliminary injunctive relief he seeks. Even so, the Court briefly addresses the third element of a § 1983 claim, constitutionally inadequate process. *Resnick*, 34 F.4th at 1035.

### 2. *Constitutionally Adequate Process*

As to the third element, assuming Gerber was able to show a deprivation of some right protected by the due process clause, the Court must look "to whether the available state procedures were adequate to correct the alleged procedural deficiencies." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Id.* This is so because deprivation, for the purpose of establishing a procedural due process claim, is not complete "unless and until the State refuses to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990); *see McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc) ("[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."). "In other words, if state courts, upon request, would provide an adequate remedy for the procedural deprivation plaintiff claims to have suffered, then there is no federal procedural due process violation, even if the plaintiff failed to take advantage of the state remedy." *Ezzard v. Eatonton-Putnam Water & Sewer Auth.,* No. 5:11-CV-505 CAR, 2013 WL 5438604, at \*13 (M.D. Ga. Sept. 27, 2013) (citing *Horton v. Bd. of Cnty. Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000)). The Eleventh Circuit has repeatedly stated that this rule "recognizes that the state must have the opportunity to 'remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts' before being subjected to a claim alleging a procedural due process violation." *Cotton*, 216 F.3d at 1331 (quoting *McKinney*, 20 F.3d at 1560).

As for deprivations of a liberty interest in one's reputation, the Eleventh Circuit has held that Georgia's writ of mandamus statute, O.C.G.A. § 9-6-20, provides a constitutionally

13

adequate remedy for due process violations by state actors. *Cotton*, 216 F.3d at 1333. Georgia law entitles a party to seek a writ of mandamus when "no other specific legal remedy is available[,] and a party has a clear legal right to have a certain act performed." *Id.* at 1332 (citing O.C.G.A. § 9-6-20). The court in *Cotton* specifically recognized a mandamus action to order a name clearing hearing as an adequate remedy for deprivations of a liberty interest in one's reputation, stating:

> If Plaintiff were without another legal remedy and proved in a state mandamus proceeding that Defendants had deprived Plaintiff of his federal liberty interest in his reputation without a hearing, then Plaintiff would have shown that he had a clear legal right to a name-clearing hearing. Therefore, Plaintiff would have been entitled to an order of mandamus directing Defendants to hold a name-clearing hearing (assuming that the mandamus proceeding was not itself a sufficient name-clearing hearing to satisfy due process).

*Id.* at 1333. Thus, even if Gerber had established a deprivation of his liberty interest in his reputation, he could have sought mandamus in a Georgia state court. And because he did not do so, *Cotton* unambiguously compels the result that Gerber's due process claim fails.

As for deprivations of property interests, courts in this Circuit have found a state law breach of contract action to be a constitutionally adequate remedy for such deprivations in the public employment context. *See Mech v. Sch. Bd. of Palm Beach Cnty.*, No. 13-80437-CIV, 2014 WL 11444112 (S.D. Fla. Oct. 27, 2014), *aff'd sub nom. Mech v. Sch. Bd. of Palm Beach Cnty.*, 806 F.3d 1070 (11th Cir. 2015), *Ingalls v. U.S. Space & Rocket Ctr.*, No. 2:14-CV-699, 2015 WL 4528687 (M.D. Ala. July 27, 2015), *aff'd*, 679 F. App'x 935 (11th Cir. 2017), *Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trs.*, 775 F. App'x 496 (11th Cir. 2019); *see also Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) (holding that a claim for breach of contract by a state actor would not support a procedural due process claim unless state contract remedies were closed to the plaintiff). Because the Court finds that Gerber's due process claim fails on the first element, the Court does not make any explicit finding regarding the adequacy of a state breach of contract action here. The Court does note, however, that Gerber's claim rests entirely on the notion that VSU was contractually prohibited from designating him as ineligible for rehire and that the constitutional interests he claims are predicated on the Retirement Agreement as an alleged contract. The Court also notes, as the Parties have made clear, that Gerber has in fact brought a breach of contract action against the Board of Regents in state

court. Thus, it is doubtful that a state court breach of contract action would not be a constitutionally adequate remedy to address the procedural deprivations Gerber claims to have suffered.

The Court finds that Gerber has not established a constitutionally protected liberty or property interest, and therefore, his due process claim necessarily fails. As such, Gerber is unable to show a substantial likelihood of success on the merits.

## C. Irreparable Injury

Although the Court need not address the remaining requirements for a preliminary injunction, having found that Gerber cannot show success on the merits, the Court briefly addresses the second element of a preliminary injunction, irreparable injury. *See Keister v. Bell*, 879 F.3d 1282, 1288 (11th Cir. 2018) (citing *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011)). A second, independent reason exists for denying the Motion: Gerber has not demonstrated that he will suffer irreparable injury in the absence of a preliminary injunction. An irreparable injury is the "*sine qua non* of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). An injury is considered irreparable only when "it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). The injury "must be neither remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176; *see Ruffin v. Great Dane Trailers*, 969 F.2d 989, 995 (11th Cir. 1992).

Gerber contends that he has suffered irreparable injury and will continue to suffer harm absent injunctive relief in the form of harm to his reputation and lost job opportunities. (Doc. 13 at 24–25). Specifically, he alleges that he lost the opportunity to teach during the 2025 fall semester, and at the time the motion was filed in December of 2025, Gerber anticipated lost opportunities for the 2026 spring semester as well because hiring for the school year "has likely already begun." (*Id.* at 25). Aside from the speculative nature of Gerber's contentions about the upcoming school year, he has not identified any jobs that he has applied for and been denied since the ineligibility designation was finalized on June 17, 2025.

15

(Doc. 16-5 at 8). Gerber only states that "no other institutions in the USG or in other university systems have contacted [him] about potential employment opportunities." (Doc. 13-1 ¶ 14). Gerber's decision not to pursue other employment opportunities is a self-imposed injury which cannot amount to irreparable harm. *See Datto v. Univ. of Miami*, No. 18-CV-21053, 2019 WL 13255542, at *10 (S.D. Fla. Nov. 18, 2019), *report and recommendation adopted*, No. 18-21053-CIV, 2019 WL 13255528 (S.D. Fla. Dec. 30, 2019) (finding that plaintiff's decision not to pursue admission at other medical schools constitutes a self-imposed injury that does not amount to irreparable harm); *Bellin v. La Pensee Condo. Assoc. Inc.*, No. 05-80071, 2005 WL 8156021, at *9 (S.D. Fla. Oct. 13, 2005) ("Moreover, it is well settled that avoidable harm is not irreparable; if a Plaintiff can mitigate the threatened 'irreparable harm,' she cannot refuse to do so and yet still claim that she would be irreparably injured absent an injunction."). And even if the Court were to assume Gerber is losing out on viable job opportunities, this is the type of harm that other courts routinely find is compensable with monetary damages. *See Creger v. United Launch All. LLC*, 571 F. Supp. 3d 1256, 1268 (N.D. Ala. 2021) (finding that plaintiffs' alleged irreparable injuries related to the loss of income or benefits could be remedied through later compensation); *Alpha Home Health Sols., LLC v. Sec'y of United States Dep't of Health & Hum. Servs.*, 340 F. Supp. 3d 1291, 1304 (M.D. Fla. 2018) (finding that "[m]ere loss of income [] does not establish irreparable injury").

Further, while Gerber also asserts ongoing reputational damage, he provides no factual allegations to support this claim. The alleged harm is thus entirely speculative. *See Smith v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, No. 6:24-CV-457, 2024 WL 4008150, at *4 (M.D. Fla. Aug. 30, 2024) (finding that terminated professor's allegation of damage to her reputation within the academic community was speculative).

Finally, a delay in seeking a preliminary injunction weighs against a finding of irreparable harm as it indicates the threat of harm is not so grave to warrant a preliminary injunction. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). "Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* (emphasis in original). For this reason, "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* Here, Gerber was aware

by at least May 13, 2025, that VSU was planning to deem him ineligible for rehire. (Doc. 16-1 at 14–15). Gerber was notified of the approval of his designation as ineligible for rehire on June 26, 2025. (Doc. 26 ¶ 117). On July 23, 2025, Gerber's appeal of the designation was denied by Dr. Carvajal in what constituted "the final institutional decision." (Doc. 16-4 at 4). As Defendants note, Gerber waited five months from the latest of these dates before filing the instant Motion on December 22, 2025. (Doc. 16 at 17); (*see* Doc. 13). Gerber claims that his delay in filing the Motion was due to his efforts in resolving the dispute without litigation and refers to exhibits containing communications with Arrington from March to June of 2025. (Doc. 22 at 18). But Gerber fails to offer any evidence or explanation as to what steps he took to resolve the dispute after his appeal to Dr. Carvajal was denied on July 23, 2025. Without such evidence or explanation, the Court cannot discern any justification for the nearly five-month delay.

Because the harms alleged here can be remedied with monetary damages, and because Gerber's unexplained delay in filing the instant Motion weighs against a finding of an irreparable harm, the Court finds that Gerber has not demonstrated that he will suffer irreparable injury in the absence of a preliminary injunction.

## CONCLUSION

For the reasons stated above, Plaintiff cannot show a substantial likelihood of success on the merits of his § 1983 due process claim or an irreparable injury that he is likely to incur in the absence of injunctive relief. As such, Plaintiff's Motion for Preliminary Injunction (Doc. 13) is **DENIED**.

**SO ORDERED**, this 20th day of April 2026.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

17